

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 23, 2017 Session

## XINGKUI GUO v. WOODS & WOODS, PP

**Appeal from the Circuit Court for Davidson County**
**No. 15C3765     Hamilton V. Gayden, Jr., Judge**

_____

### No. M2016-01435-COA-R3-CV

_____

A former client sued his former attorney for breach of contract, and the trial court entered judgment in favor of the client for $3,500. Because the trial court found that the attorney had "justifiable reasons" for terminating the contract, and because the contract provided that the $7,000 set fee paid by the client at the beginning of the representation was earned upon payment, we have determined that the trial court erred in entering judgment in favor of the client.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ANDY D. BENNETT, delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Xingkui Guo, Nashville, Tennessee, Pro Se.

Mark J. Downton, Nashville, Tennessee, for the appellee, Woods & Woods, PP.

### OPINION

FACTUAL AND PROCEDURAL BACKGROUND

Xingkui Guo signed a contract, structured as an engagement letter, with the Law Offices of Woods & Woods ("the Firm"), on June 15, 2014, for the Firm to represent him in an ongoing lawsuit against two of his former employees. Allen Woods, an attorney with the Firm, had primary responsibility for Mr. Guo's case. The engagement letter contains the following pertinent provisions regarding the Firm's fees:

> You and the firm both agree that a set fee and a fee contingent upon the
> outcome of your litigation involving your pending lawsuit for libel and

malicious prosecution is the appropriate method to determine our legal fee in this case. Please be advised that the Law Offices of Woods and Woods does not guarantee any specific outcome or certain result. All parties, however, agree that upon the execution of this Engagement Letter, you will deposit with Woods and Woods, PC a set fee of $7,000 for all work performed with regard to the initial trial in regard to your already pending lawsuit. Thereafter, following final resolution of this case in your favor, whether as a result of receiving a court ordered judgment for a certain amount or as a result of an agreed upon settlement between you and the adverse party(ies), Woods and Woods, PC shall be entitled to 33% of any judgment or settlement actually collected, minus the $7,000 fee already paid to the firm. *The set fee is earned upon payment and does not guarantee any certain result.*

(Emphasis added). The contract further states: "[The Firm] may terminate this representation at any time, for good cause . . . ." Upon signing the engagement letter, Mr. Guo paid the Firm $7,000, and the Firm began its representation of Mr. Guo.

A disagreement arose between Mr. Woods and Mr. Guo beginning in early October 2014. After Mr. Woods conducted phone interviews with two third-party witnesses, he strongly advised Mr. Guo against taking their depositions because he thought their testimony would hurt Mr. Guo's case and because he thought it would be unethical to depose the witnesses under the circumstances. When Mr. Guo insisted that Mr. Woods depose these two witnesses, Mr. Woods withdrew as Mr. Guo's attorney.

In July 2015, Mr. Guo filed a civil warrant in general sessions court against Mr. Woods for breach of contract. The warrant was amended to dismiss Mr. Woods individually and substitute the Firm as the proper defendant. On October 1, 2015, the general sessions court entered judgment in favor of Mr. Guo in the amount of $2,275. Mr. Guo appealed to circuit court, and the Firm answered, denying any breach of contract and, alternatively, asserting a claim for offset pursuant to quantum meruit for services rendered by the Firm.

The Firm filed a motion for summary judgment on December 29, 2015 along with a statement of undisputed material facts. On February 5, 2016, Mr. Guo, acting pro se, filed an unsigned response to the Firm's motion. On February 16, 2016, the Firm filed a motion to compel a response to its interrogatories and request for production of documents and to deem admitted its requests for admission due to Mr. Guo's failure to respond to them.

The trial was set for June 23, 2016. On June 17, 2016, the Firm filed a motion in limine requesting that the trial court rule on several matters. First, the Firm asked the court to rule on the pending motion for summary judgment, which had been heard

months earlier and upon which the court had reserved ruling. Second, the Firm asserted that the court should dismiss the lawsuit based upon Mr. Guo's failure to prosecute, particularly his failure to respond to the interrogatories. Third, the Firm requested that the court declare the factual averments set forth in its statement of material facts to be accurate and not in dispute due to Mr. Guo's failure to respond to them. At the beginning of the hearing, as stated in its final order, the trial court "merge[d] the issues presented by Defendant in its Motion for Summary Judgment into the issues presented during the Bench trial."[1]

During the trial, the trial court heard testimony from Mr. Guo and Mr. Woods. Mr. Woods testified about his work on Mr. Guo's case and stated that he had interviewed the two police officers at issue in contemplation of taking their depositions. After those interviews, Mr. Woods stated, he advised Mr. Guo that the police officers' depositions would hurt his case and that it would be unethical for Mr. Woods to depose them. Over Mr. Woods's objections, Mr. Guo introduced testimony from Renee Brewer, a private investigator, who stated that she had talked to the two police officers and that they could not recall speaking with Mr. Woods. The trial court stated at the hearing that it did not accept Ms. Brewer's testimony, but this finding is not reflected in its order.

In its final order, entered on July 8, 2014, the trial court found, in pertinent part:

Defendant admits that it refused to take the depositions of these witnesses, but states that it refused to take the depositions because to do so would violate Rule of Professional Conduct 1.2(d) and would further the Plaintiff's ulterior motive to take those depositions for a fraudulent purpose not related to the litigation. The Defendant requests that the Court rule it is entitled to the entirety of the $7,000.00 fee the Plaintiff previously paid it. In support of its argument, the Defendant offers evidence that its attorneys performed 20.4 hours of work on the Plaintiff's lawsuit. Plaintiff requests $22,000.00 in damages for this alleged breach of contract. Based on the evidence presented at trial, the Court makes the following findings of fact:
- The Defendant had justifiable reasons to refuse to take the depositions of the third party witnesses because the Defendant reasonably believed that to do so would violate Rules of Professional Conduct; and
- The 20.4 hours of work the Defendant performed on the Plaintiff's case is overblown.

Based on these findings of fact, the Court hereby rules that the Plaintiff is entitled to a judgment of $3,500 against the Defendant.

---

[1] At the hearing, the court found the crucial dispute for its determination to be whether Mr. Woods had "reasonable reason to terminate the contract under the letter of engagement."

On appeal, Mr. Guo argues that the trial court erred in awarding Mr. Woods $3,500 in attorney fees without sufficient evidence. In his statement of the issue, Mr. Guo includes assertions that the trial court's judgment "might be influenced by Mr. Allen Woods' personal connections" and was based on Mr. Woods's lies, and that the trial was not a fair trial. The Firm raises several additional issues: whether the trial court erred in failing to grant summary judgment to the Firm, failing to dismiss Mr. Guo's claims prior to trial, granting a judgment to Mr. Guo in the absence of a finding of a breach of contract, and calculating the damages.

ANALYSIS

We begin by addressing Mr. Guo's status as a pro se litigant. This Court has frequently cited the following principles from *Young v. Barrow*:

> "Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe."

*Murray v. Miracle*, 457 S.W.3d 399, 402 (Tenn. Ct. App. 2014) (quoting *Young v. Barrow*, 130 S.W.3d 59, 62-63 (Tenn. Ct. App. 2003)) (citations omitted); *see also Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003). Thus, a pro se litigant must comply with the same rules that lawyers must observe. *Watkins v. Watkins*, No. M2016-00165-COA-R3-CV, 2017 WL 544695, at *4 (Tenn. Ct. App. Feb. 10, 2017); *Watson v. City of Jackson*, 448 S.W.3d 919, 926 (Tenn. Ct. App. 2014).

Tennessee Rule of Appellate Procedure 27 governs the content of appellate briefs. Subsection (a) of that rule identified the requirements for the appellant's brief and provides, in pertinent part, as follows:

> The brief of the appellant shall contain under appropriate headings and in the order here indicated:
> (1) A table of contents, with references to the pages in the brief;
> (2) A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;
> . . . .
> (4) A statement of the issues presented for review;

(5) A statement of the case, indicating briefly the nature of the case, the course of proceedings, and its disposition in the court below;

(6) A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;

(7) An argument, which may be preceded by a summary of argument, setting forth:

      (A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and

      (B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);

(8) A short conclusion, stating the precise relief sought.

Mr. Guo's initial brief fails to meet the requirements of Rule 27(a) in numerous respects, and his reply brief is likewise deficient. Mr. Guo's brief does not contain a table of contents or a table of authorities. In fact, Mr. Guo does not cite a single authority in either of his briefs. Mr. Guo's statement of the facts does not include any references to the record and includes statements that cannot be supported by the record. For example, Mr. Guo states: "[Mr. Woods] hide the fact that he was afraid and then withdrew when been blackmailed by the police officer." There is no support for this statement anywhere in the record. Mr. Guo also states: "The reason [that Mr. Woods told Mr. Guo to sue him in court for the disputed attorney fees] I learned later is because he had personal relationship with judges and the judge will give him 'the benefit of the doubt.'" As the source for this statement, Mr. Guo cites an audio recording "not permitted in circuit court file." Mr. Guo also accuses Mr. Woods of lying to the court and defrauding him, again without any citation of support in the record.

Mr. Guo's half-page argument section also fails to comply with Tenn. R. App. P. 27(a). Mr. Guo does not present a cogent argument setting for his contentions, reasoning, or the applicable standard of review. *See* TENN. R. APP. P. 27(a)(7). The section contains no citation of legal authority or citations to the record. *See* TENN. R. APP. P. 27(a)(7)(A). After summarizing the evidence (including the testimony of the private investigator that Mr. Guo acknowledged the trial court "for some reason did not consider"), Mr. Guo states that, "I could not locate any credible achievement that Mr. Allen Woods put in my case." Furthermore, Mr. Guo fails to cite the "alleged erroneous action of the trial court" and "how such alleged error was seasonably called to the attention of the trial judge," as required by Tenn. Ct. App. R. 6.

It is not the role of this or any court "to research or construct a litigant's case or arguments for him." *Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.*, 301 S.W.3d 603,

615 (Tenn. 2010). A court may deem an issue to be waived "when the brief fails to include an argument satisfying the requirements of Tenn. R. App. P. 27(a)(7)." *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012). This Court has made the following observations regarding a litigant's failure to comply with Tenn. R. App. P. 27(a)(7):

> Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue. *See State v. Schaller*, 975 S.W.2d 313, 318 (Tenn. Crim. App. 1997); *Rampy v. ICI Acrylics, Inc.*, 898 S.W.2d 196, 210 (Tenn. Ct. App. 1994); *State v. Dickerson*, 885 S.W.2d 90, 93 (Tenn. Crim. App. 1993). Moreover, an issue is waived where it is simply raised without any argument regarding its merits. . . . This Court is under no duty to verify unsupported allegations in a party's brief, or for that matter consider issues raised but not argued in the brief.

*Bean v. Bean*, 40 S.W.3d 52, 55-56 (Tenn. Ct. App. 2000). Based upon Mr. Guo's failure to comply with the requirements of Tenn. R. App. P. 27(a)(7) in his appellate brief, we conclude that he has waived his arguments on appeal and we, therefore, dismiss his appeal.

We next consider the Firm's argument that the trial court erred in entering judgment in favor of Mr. Guo because it did not find that the Firm breached the contract. We agree. The trial court expressly found that Mr. Woods "had justifiable reasons to refuse to take the depositions of the third party witnesses because [Mr. Woods] reasonably believed that to do so would violate Rules of Professional Conduct." The trial court's order does not include a statement that the Firm breached the contract. Instead, the trial court's finding that Mr. Woods had "justifiable reasons" for refusing to take the depositions suggests that the Firm did not breach the contract. Thus, the trial court erred in entering judgment in favor of Mr. Guo.

In light of the fact that the Firm did not breach the contract, the trial court also erred in its determination regarding attorney fees. The trial court expressly adopted the engagement letter as the written agreement between the parties. Pursuant to the terms of the contract, the $7,000 set fee that Mr. Guo paid upon signing the engagement letter was "earned upon payment." In *Stalls v. Pounders*, No. W2003-02933-COA-R3-CV, 2005 WL 181687, at *5 (Tenn. Ct. App. Jan. 27, 2005), this Court discussed a three-part test for determining the enforceability of a contract for a non-refundable retainer fee. Because the contract in the present case is a written engagement letter, the first two parts of the *Pounders* test are not at issue.[2] The issue here is whether "the terms of the contract

---

[2] Under well-established Tennessee law, "'a person who signs a contract is presumed to understand the terms of the agreement that he has signed.'" *Advantage Windows, Inc. v. Zacarias*, No. E2014-00122-COA-R3-CV, 2014 WL 4403106, at *5 (Tenn. Ct. App. Sept. 8, 2014) (quoting *Skaan v. Fed. Express*

are just and reasonable." *Pounders*, 2005 WL 181687, at *5 (quoting *Alexander v. Inman*, 974 S.W.2d 689, 694 (Tenn. 1998)).

The trial court found that the 20.4 hours claimed by Mr. Woods were "overblown." The Tennessee Supreme Court has stated:

> [T]he factors to be considered in determining the reasonableness of a fee are "the time and labor required, the novelty and difficulty of the questions involved, the skill required to perform the services properly, the amount involved and results obtained, and other relevant factors." Additional factors relevant to reasonableness of a fee include: the time limitations imposed by the circumstances, the fee customarily charged in the locality for similar legal services, and the experience, reputation, and ability of the lawyer performing the legal service.

*Inman*, 974 S.W.2d at 695 (citation omitted). Mr. Woods submitted a summary of his time on the case, totaling 20.4 hours. His work included reviewing the case file and other documents, drafting and responding to emails, appearing at status conferences, discussions with the client and with opposing counsel, preparing to depose the two defendants, and interviewing two police officers. At the hearing, Mr. Woods testified that, once he got the file from Mr. Guo's previous attorney, he found that he "had to reconstruct the file, reconstruct the evidence, and start preparing for depositions."

Mr. Woods testified that he had "plenty of experience at malicious prosecution and defamation cases." He advised Mr. Guo of his hourly rate ($300), but Mr. Guo "expressed some reservation about committing a large retainer and hourly rate to a case that had been ongoing and not really know what the outcome would likely be." According to Mr. Woods, Mr. Guo "actually proposed the hybrid fee" reflected in the engagement letter. Mr. Woods further testified about the factors that went into the set fee amount of $7,000:

> A. The factors that went into it is that was the fee for our office to take the case. As I expressed to Mr. Guo in the written memo we sent him previously, I had significant doubts that we would ever be able to collect on a judgment. I thought, based on what I knew at that point, we probably would secure a judgment for him—a verdict. But I had doubts

*Corp.*, No. W2011-01807-COA-R3-CV, 2012 WL 6212891, at *8 (Tenn. Ct. App. Dec. 13, 2012). This rule applies even when the person signing the contract cannot read the language in which it is written; the person signing the contract has the responsibility to find someone to help him or her understand its meaning. *Id.* Mr. Guo and Mr. Woods signed a detailed written contract containing the set fee, and the evidence does not preponderate against the presumption that "'the client fully understood the contract's meaning and effect'" and "'the attorney and client shared the same understanding of the contract.'" *Pounders*, 2005 WL 181687, at *5 (quoting *Alexander v. Inman*, 974 S.W.2d 689, 694 (Tenn. 1998)).

that we'd ever be able to collect.
In fact, I advised him that he would probably have to go to California to domesticate the judgment to try and seize whatever property or garnish whatever wages his former employees were making there. So that was the fee just for our firm to set aside our time and work we were doing on other cases to take on this case.
Q. Were you concerned that he had had problems with prior lawyers?
A. I had some concern.

We find that the evidence preponderates against the trial court's finding that Mr. Woods's hours spent on the case were "overblown." Mr. Woods's written summary and testimony support the hours he claims to have spent on the case. His set fee was reasonable in light of his qualifications and experience, Mr. Guo's concerns about paying an hourly rate, the time and labor required, the likelihood of collecting on the judgment, and the fees typically charged in the local legal market for similar services.[3]

We conclude that the trial court erred in awarding Mr. Guo $3,500 because he was not entitled to the return of any of the $7,000 he paid to the Firm.

CONCLUSION

The judgment of the trial court is reversed, and this matter is remanded to the trial court with instructions to enter an order consistent with the opinion. Costs of appeal shall be assessed against the appellant, Mr. Guo, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[3] At 20.4 hours, the $7,000 set fee award results in an effective hourly rate of approximately $343.